J. Mark Chevallier (State Bar No. 04189170)
David L. Woods (State Bar No. 24004167)
James G. Rea (State Bar No. 24051234)
McGuire, Craddock & Strother, P.C.
2501 N. Harwood, Suite 1800
Dallas, Texas 75201
Telephone: (214) 954-6800
Facsimile: (214) 954-6850
Email: mchevallier@mcslaw.com
Email: dwoods@mcslaw.com
Email: jrea@mcslaw.com
PROPOSED ATTORNEYS FOR DEBTOR AND
DEBTOR-IN-POSSESSION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | CASE NO. 10-31814-BJH-11 |
| **TARAZ KOOH, LLC,** | § | |
| | § | **CHAPTER 11** |
| | § | |
| **DEBTOR.** | § | |

**DECLARATION OF ALIREZA MORIRAHIMI
IN SUPPORT OF FIRST DAY MOTIONS**

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

I, Alireza Morirahimi, upon penalty of perjury declare as follows:

1. "I am over eighteen (18) years of age, have never been convicted of a crime of moral turpitude; and, unless otherwise stated, have personal knowledge of all facts stated herein, and am competent to testify to them.

2. "I am the Vice President of Farvardeen, Inc., a Texas corporation, the sole manager ("Manager") of Taraz Kooh, LLC, a Texas limited liability company ("Taraz Kooh"). Taraz Kooh is the debtor and debtor in possession in the above captioned case ("Debtor").

**Declaration of Alireza Morirahimi- Page 1**
658202

3. "In my capacity as Vice President of the Manager, I have personal knowledge of, and am familiar with, the business affairs, day to day operations, books and records, and financial condition of the Debtor, and I am authorized to submit this Declaration on behalf of the Debtor.

4. "On March 14, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court").

5. "The Debtor remains in possession of its assets and continues to manage its business as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

6. "No trustee, examiner, or committee has been appointed in this case.

7. "Contemporaneously herewith, the Debtor has filed the following motions and applications (collectively, the "First Day Motions");

    a.    Motion for an Order Pursuant to Bankruptcy Rule 1007(a)(4) Granting an Extension of Time for Filing Schedules and Statements of Financial Affairs;

    b.    Motion of Debtors Pursuant to 11 USC §§ 105(a) and 363(b) for an Order Authorizing Payment of Pre-Petition (i) Wages, Salaries, and Other Compensation of Employees (ii) Employee Medical and Similar Benefits and (iii) Reimbursable Employee Expenses and (iv) Other Miscellaneous Employee Expenses and Benefits;

    c.    Motion for Interim and Final Orders (i) Prohibiting Utility Providers from Altering, Refusing or Discontinuing Service (ii) Deeming Utility Providers Adequately Assured of Future Performance, and (iii) Establishing Procedures for Providing Adequate Assurance of Future Performance to Utility Providers;

d. Debtor's Emergency Motion for an Interim and Final Order (a) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §§ 105, 361, 362, and 363(C); (b) Granting Adequate Protection; and (c) Request for Interim Hearing Before March 17, 2010;

e. Debtor's Emergency Motion Pursuant to Sections 105(a) and 541 Seeking Authority to Pay Pre-Petition Sales and Use and Hotel Occupancy Taxes.

8. "I am submitting this Declaration in support of the Debtor's First Day Motions. Capitalized terms not defined in this Declaration shall have the meaning described to the term in the relevant First Day Motion. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, my opinion based upon my experience and knowledge of the Debtor's operations and financial condition, and information provided to me by employees, advisors, or other representatives of the Debtor. If I were called upon to testify, I would testify consistently with the facts set forth in this Declaration.

9. "The Debtor is the owner of a 294 room hotel property located at 1981 North Central Expressway, Richardson, Texas 75080 (the "Hotel"). The Hotel operates under the Doubletree flag pursuant to a franchise license agreement between the Debtor as licensee and Doubletree Franchise, LLC, a subsidiary of the Hilton Hotels Corporation, as licensor ("Doubletree License Agreement").

10. "The Debtor acquired the Hotel on February 1, 2008 for a purchase price of $20 million. The purchase price was financed through a secured loan of $16,785,000 from Column Financial, Inc. and approximately $4.5 million in equity capital provided by the Debtor's owners. At the time the Debtor acquired the Hotel, the Hotel was operated under the Radisson flag.

11. "Since the Debtor's acquisition of the Hotel, the Debtor has endeavored to improve the Hotel's physical plant and operations. As part of that effort, the Debtor commissioned a marketing study of the Hotel and its peer competition in its geographic market. As a result of that

**Declaration of Alireza Morirahimi- Page 3**
658202

study, the Debtor determined in the early fall of 2008, that in order to preserve and improve the value of the Hotel it would be necessary to re-brand the Hotel. Accordingly, the Debtor began the process that ultimately led to entry into the Doubletree License Agreement. To meet the Doubletree standards, the Debtor was required to perform certain PIP work on the Hotel. In order to fund the PIP work, the Debtor obtained loans from its two principal owners. Approximately 1.5 million dollars was loaned to the Debtor by its principal owners on an unsecured basis for the improvement of the property necessary to satisfy the PIP requirements required for the Doubletree License Agreement.

12. "The re-flagging process, and the operational benefits that could be derived from it, were delayed substantially by the Trustee's loan servicer, Key Bank, which was very dilatory in considering and responding to the Debtor's request for approval to re-flag the Hotel.

13. "Unfortunately, just as the extensive updating, renovations and remodeling in connection with the re-flagging process had commenced, the downturn in the U.S. economy accelerated and correspondingly, both business and leisure travel suffered precipitous declines. U.S. revpar, a measure of occupancy and room revenue that is considered a barometer of the lodging industry health fell 17% in 2009. In that regard, the Hotel, like virtually every hotel in this market, as well as in other large urban markets in the country, experienced a substantial decrease in occupancy rates and overall revenues.

14. "Accordingly, in July of 2009, the Debtor was no longer able to generate sufficient revenues to pay debt service in connection with the first lien debt.

15. "Key Bank, which was the original servicer under the terms of the CMBS indebtedness which was used to acquire the Hotel, eventually turned over servicing on the loan to the special servicer, Midland Financial Services.

<u>Declaration of Alireza Morirahimi</u>- Page 4
658202

16. "In turn, Midland and the Debtor have engaged in extensive discussions to try to reach terms on a possible work out and restructuring of the Hotel operations. Beginning in January of 2010, Midland initiated proceedings seeking to have a receiver appointed for the Hotel. The Debtor and Midland continued in negotiations but ultimately were unable to reach an agreement and Midland scheduled its Application for Appointment of Receiver for hearing on March 15, 2010.

17. "Believing that a state court receivership proceeding is simply inadequate for the purpose of accomplishing an overall restructuring of the Hotel's capital structure and preserving the business as a going concern, the Debtor determined that its most prudent course of action was to initiate this Chapter 11 proceeding. Accordingly, on March 14, 2010, the Debtor filed this case.

18. "Currently, the Debtor's main liabilities are: (i) $16,503,721.21 in principal plus accrued interest and other charges arising under the first lien CMBS loan now held by the Trustee; (ii) $670,000.00 representing the approximate gross balance due under two separate five year lease agreements between the Debtor as lessee and Vendor Capital Group as lessor for furniture and fixtures obtained as part of the upgrades necessary to obtain the Doubletree license; (iii) $160,281.29 for the remaining balances owed to various contractors and suppliers who performed PIP work; (iv) approximately $103,201.04 in general trade accounts payable and (v) approximately $1,750,000 for the owners loan to pay for part of the PIP requirements and to acquire an unimproved lot adjacent to the Hotel.

19. "The Debtor's primary assets consist of the Hotel property and related FF&E described above, the adjacent unimproved lot which has a value of $220,000 and cash on hand of approximately $142,000, not including escrow balances held by the Trustee.

20. "I declare under penalty of perjury that the foregoing is true and correct."

/s/ Alireza Morirahimi   (03/15/10)
Alireza Morirahimi, Vice President
Farvardeen, Inc.

Declaration of Alireza Morirahimi- Page 6
658202